Green, J.
delivered the opinion of the court'.
The codaplainant and the defendant, Arthur, entered into the following "agreement, viz: “James P. Peters having heretofore purchased bf. John C. Hamilton a cértain tavei’h áiid lots in Dresden, Tennessee, and having given to him sundry notes and obligations which T: Cooney, as administrator of John C. Hamilton, held in his possession, to wit: one obligation to pay Charlton for Hamilton seven hundred dollars; also One obligation to convey to J; C. Hamilton one-half of a certain tract of land of eight hundred acres, known as the Solomon Cotton tract, lying in Weakley county; and there being one other claim in favor of Jesse Edmondson for carpenter’s work done on said house: all of which claims are *538 centered in Nathaniel A. Ewing; and whereas, I have this ■ day conveyed by bond, first as the agent of James P. Peters, and from myself, the said property to Mr. A. Toby for the sum of three thousand four hundred dollars, to be paid as follows, viz: five hundred dollars 1st January, 1838; one thousand four hundred and fifty dollars 1st January, 1839; and one thousand four hundred and fifty dollars 1st January, 1840; the two last bearing interest from the date. Now it is understood and agreed on by the parties, and signed that the said three notes from Albert Toby to the said William Arthur are to remain in the hands of T. Cooney, of Paris, Ten-hessee, until the said N. A. Ewing and James P. Peters settle, and until the end of any suit for adjudication of said claims that said Ewing may hereafter bring or institute against the said James P. Peters; and all that íitay be so recovered by said suit or settlement is to be paid out of said Toby’s notes, for the payment of which a lien on said tavern and out lots is held by said Arthur. And for and in consideration of the premises, the said N. A. Ewing does hereby bargain and sell, and by these presents do bargain, sell, alien, convey and deliver unto the said William Arthur all the lien he may have to said property, viz: No. 10, in Dresden, Tennessee,, and the eastern halves of lots No. 40, 41, 42, used as stable lots to said tavern lot by virtue of said claims, and all right he may have to the same by deed of conveyance to him from T. Cooney and Dudley Jennings bearing date Oct. 7th, 1837. Witness our hands-and seals this 18th November, 1837.
Wiul. Arthur, (Seal.)
N. A. Ewino, (Seal.)”
After this contract was executed Ewing and Peters had a settlement, and Peters falling in debt two thousand and eighty-seven dollars and eighty-five cents, Arthur assigned to Ewing the note on Toby for five hundred dollars and the one for one thousand four hundred and fifty dollars, payable 1st January, 1839, and executed his own obligation to pay Ewing one hundred and seven dollars and eighty-five cents out of the one thousand four hundred and fifty dollar note on Toby, due the 1st January, 1840,' when the same should be collected.
*539 The assignment on the said notes is as follows:
“I assign the within to N. A. Ewing without other re- ■ course on me than the lien on- the property in Dresden, for which the note was given. Will. Arthur.”
The notes which had been assigned to Ewing having fallen due and being unpaid, he filed this bill against Toby and Arthur to subject the property to be sold for their satisfaction.
The only question in the case is, whether the proceeds of the sale of the property ought to be applied first to the payment of Ewing’s entire claim, or whether the said proceeds shall be apportioned, pro rata, among the several holders of Toby’s notes. It will be seen in the agreement of the 18th of November, 1837, between Arthur and Ewing, that Arthur undertook to pay out of Toby’s notes whatever amount Peters should, be indebted to Ewing, and Ewing, in consideration thereof, conveyed to Arthur all the lien he had to said property by virtue of his ownership of the claims recited in the agreement, and also all the right he had to the same by virtue of a deed of conveyance to him from T. Coo-ney and Dudley Jennings. He thus expressly parts with all the lien he had upon the property by reason of the non-payment of the purchase money to him, and contents himself with the recitation, that Arthur had retained a lien upon'the property to secure the purchase money from Toby, whose notes were to be assigned to him. This, we think, is the only construction of which this agreement is susceptible; and if it should appear to have been an ill advised contract, in which he might lose and could not gain any thing, still we could not alter the agreement of the parties and settle their rights otherwise than according to the stipulations of their contract. But it by no means appears that the complainant* has made an injudicious bargain; he was entitled'to have the. decree for about four hundred and fifty dollars satisfied, which, he had purchased from Cooney and Jennings, and which, constituted the balance of the purchase money due from Pe-. ters, and he had become entitled to the claim of Edmondson,, the carpenter, of about three hundred and fifty dollars; for-this eight hundred dollars there was a lien upon the property, and if it had been sold under the decree without any private *540 qontract with Arthur, this eight hundred dollars is all that he . could have recovered or that could have been secured to him by the sale of the property. The obligation of Peters to convey to Hamilton the one-half of an eight hundred acre tract of land, of which the. complainant was assignee, formed no lien upon the property although it was given in part consideration for the purchase of it. It was no money demand upon Peters, but a covenant to convey other land. This land Hamilton had agreed to take as part payment for the lots in Dresden. If Peters failed to convey he was liable to an action for damages, but certainly the damages which might have been recovered would have formed no lien on the lot; the recovery might have been twice as much or not half so much as Hamilton agreed to give for the land, and could not therefore be. part of the. purchase money due for the lot; it was in fact an exchange of property. Hamilton executing his bond for a title to, the lots, and Peters giving his bond for the half of the eight hundred acre tract of land and agreeing to pay an additional sum in money, neither Hamilton, therefore, nor Ewing, his assignee, had any lien on the lots for the claim on Peters by virtue of the bond for a title to half of the eight hundred acre tract of land. When Arthur agreed to pay out of Toby’s notes whatever amount Peters should fall in debt to Ewing on account of his land, it may be, for aught that we can know, that he agreed to secure a claim which otherwise might have been disputed. If that be so there was motive enough to induce him to take the chance of Toby’s responsibility, coupled with the liability of the property to pay the whole amount Toby agreed to pay to Arthur for the purchase. But be this as it may, it can have no effect in the decision of this cause, unless the meaning of the agreement’ be thought ambiguous. But this is not our opinion; for we think it most clearly imports an entire surrender of his lien by Ewing, and an agreement to take Toby’s notes with such consequences as might attach to them. The complainant’s counsel has insisted that the terms of the assignment of the notes confer an exclusive lien or a preference of satisfaction upon complainant; we do not think so. When he says he assigns the notes without other recoups^ *541 on him than the lien on the property for which they were given, Arthur manifestly only meant to place them in the same situation in Ewing’s hands that they were, in, while he held them. The parties might probably have entertained doubt whether the mere- endorsement of the notes would, as a conveyance, have transferred to the assignee the lien. Certainly there are no words used in the. assignments which indicate a meaning that these notes are to have a preference over the one not assigned, should a sale of the property be necessary for their satisfaction. The cases of Legrand vs. Hodges, 1 Vesey, 477, and of Yeates vs. Groves, 1 Vesey, 280, do not change this view of the case. Those cases raised the question whether an agreement to set apart a particular fund for the payment of a particular creditor raised a trust and created a lien upon that fund in favor of such creditor. The court decided that it would; for that it was a universal maxim, that whatever persons agree concerning any particular subject, that, in a court of equity as against the party himself and any claiming under him voluntarily or with notice, raises a trust.
These cases are unquestionably supported by the well settled principles of equity, but their particular application to the facts of this case is not perceived. There is no doubt but that Ewing is entitled to a lien upon the lots in question for the payment of the notes he holds as well by the assignment on the notes as by the agreement between the parties of the 18th November, 1837. This lien is created by the express terms of the contract, and the only question is whether he is to have priority of satisfaction of the note which w.as retained by Arthur. The case of the Mechanics Bank vs. The Bank of Niagara, 9 Wend. Rep. 410, is pretty strongly in point, and at the first blush might be thought decisive of the question. But upon a critical examination of that case it will be found to differ from the one before the court in several material particulars. In that case it appeared that the Bank of Niagara held a bond and mortgage against one A. S. Clark, bearing date 1st March, 1819, given to them to secure the payment of two thousand two hundred and fifty dollars on the 28th March, 1820. By an endorsement on *542 the bond they assigned to Seth Jenkins and his assigns one -thousand nine hundred and thirty-three dollars and sixty-one cents of the said bond, and authorized him to demand and receive the same, and to take all legal means for the collection of said sum, and when collected to apply the same to his or their use and benefit. Then followed a proviso in these words: “Provided always that nothing herein contained shall be so construed as to prevent the said party of the first part (i. e. the Bank of Niagara) from receiving the residue of the sum due or to become due by the within bond to the said party of the first part, nor from disposing of the same in such manner as they may deem fit;” and a further proviso that Jenkins should not commence any proceedings for the recovery of the said sum of one thousand nine hundred and thirty-three dollars and sixty-one cents until the expiration of four years; and by an endorsement on the mortgage they assigned to Jenkins the sum of one thousand nine hundred and thirty-three dollars and sixty-one cents “of the amount of the within mortgage in the particular manner described in the assignment of a certain bond accompanying this mortgage, and bearing even date with the same.” The interest in the bond and mortgage thus assigned to Jenkins passed, by divers more assignments, to the Mechanics Bank on the 6th May, 1826. In May, 1827, H. B. Potter, acting, as the attorney of the two banks, sold the mortgaged premises under a statutory foreclosure of the mortgage for the nominal price of one thousand three hundred and fifty dollars, and the two banks executed a deed of the premises to Potter, who, in August following, conveyed the premises to the defendants. The deed to Potter, after setting forth the mortgage, recited the assignment to Jenkins,, stating that “whereas a certain interest in said indenture of mortgage was,” &c. assigned to Jenkins, and then set forth the subsequent assignments down to the Mechanics Bank, proceeding thus: “who thereby became, and were and still are, joint owners with the said president, directors and company of the Bank of Niagara of the said indenture of mortgage, according to their respective interests as specified in the aforesaid assignments and the said indenture of mortgage.” In *543 August, 1828, the said Bank of Niagara commenced its suit against the Mechanics Bank, and claimed to recover the proportion which the unassigned interest in the bond and mortgage bears to the proceeds of the sale with the interest accrued thereon, which together, it was admitted, amounted at the time of the trial to two hundred and eight dollars and sixty-three cents. Jenkins (the assignee of the bond and mortgage) was sworn as a witness on the part of the defendant, although objected to, and testified that in March, 1820¿ he, as the agent of the Bank of Hudson, went to Buffalo to obtain payment or security for a debt owing by the plaintiff to the Bank of Hudson, which had been liquidated in the preceding year at between twenty-two hundred and twenty-five hundred dollars; that the plaintiff first offered the mortgage of Clarke as security for the nominal amount of it, which he refused to accept; whereupon the assignment in the form it appeared was made, and other securities were assigned in addition, and part was paid in cash. The chief justice of the superior court charged the jury that the said plaintiff was entitled to a verdict for the said sum of two hundred and eight dollars and sixty-three cents, and that the testimony of Jenkins could not and did not vary the construction of the deeds or instruments produced in evidence. The jury found.accordingly. The defendant having excepted to the charge of the judge, sued out a writ of error. The supreme court reversed the judgment of the court below and gave judgfnent for the defendant on the ground that “thé plaintiff' was indebted to the Bank of Hudson, whom Jem kins represented, and when called on for payment or security, assigned to Jenkins an interest in the bond and mortgage in question to the extent of one thousand nine hundred and thirty-three dollars and sixty-one cents, and expressly authorized him or his assigns to take all legal measures to collect the said sum, and when collected to apply it, that is the said sum, to his or their own exclusive use;” and upon the ground that, “all doubt as to the actual intention and understanding of the parties at the lime of the assignment is removed by the testimony of Jenkins.”
The first remark I make in relation to this case is, that it *544 is very doubtful whether it can be sustained by á sound con-struction of the agreement of the parties. In the deed from the two banks to Potter it is recited that the Mechanics Bank v^as joint owner with the Bank of Niagara of the said indenture of mortgage “according to their respective interests, as specified in the aforesaid assignments and the said indenture of mortgage.” This language seems to indicate strongly that they were to share of the proceeds of the sale, pro rata, according to their respective claims. But the court evidently place the decision principally upon the testimony of Jenkins. The fact of the previous indebtedness of the Bank, of Niagara to the Bank of Hudson, and the fact that the Bank of Niagara had offered the mortgage of Clark as security for the nothin al amount of it, which Jenkins refused to accept, showed, from the nature of the transaction; that the intention of the parties was that the parties were not to participate in the sum that might be produced from the bond and mortgage if it should amount to less than the interest assigned to Jenkins. Besides the court lay great stress upon the words of the assignment, that Jenkins and his assigns were authorized to take all legal means to collect said sum, and that the plaintiff reserved th'e right of disposing of the residue;
We have been thús particular in our reference to this casé that it may be cleai'ly seen upon what reasons the décision was made, and to show that the peculiar terms of the contract, as expressed by the previous indebtedness of the assignor to the assignee, governed the court in its decision, and not any general principle as applicable to such contracts. In the case before us we find none of the reasons for giving the complainant a preference of satisfaction which the court relied on in the case we have had under review. Here Arthur was not indebted to Ewing at all, ánd Ewing’s entire claim upon the property, as we have seen, did not amount to eight hundred dollars. What reason Arthur had for agreeing to pay the amount which Peters owed Ewing we are not informed; but we cannot infer that there was any thing in the previous transactions calculated to show that the parties had a meaning different from the plain import of the words *545 they have used in the contract. What then is the contract? It recites that the property had been sold to Toby, arid that his three notes for the payment of the purchase money had been taken and a lien had been retained upon the property sold; and it stipulates that all thé amount which Ewing may recover of Peters “by suit or settlement, is to be paid out of Toby’s ndtes” when the amount should be ascertained; the notes were assigned “without other recourse than the lien on the property.” We cannot perceive in this transaction any evidence of an intention that the notes assigned should have any preference of satisfaction, should a sale of the properly become necessary, over the one Arthur retained. As a lien was retained upon the property for the entire purchase money of the lots, there must be something in the contract to show an intention to give a preference to the complainant before we can be authorized to decree him priority of satisfaction. In the case of Graham vs. M’Campbell, decided at the present term, some of the notes for the purchase money had been assigned and some had not. The court directed the proceeds of the sale to be divided pro rata among all the holders of the notes. As we think there is nothing in this case to prevent the application of the same principle, we are of opinion that the property in question be sold and that the proceeds be so distributed among the several parties entitled thereto.
Let the decree be affirmed.